30787

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CONTINENTAL INSURANCE CO.,    ) | |
|                                           ) | |
|       Plaintiff,                          ) | |
|                                           ) | |
|       v.                                  ) | |
|                                           ) | No.:    17-cv-2607 |
| NIKOLA VUKOVIC, AAA FREIGHT, INC., and    ) | |
| MILJAN RANCIC,                          ) | |
|                                           ) | |
|       Defendants.                      ) | |

**PLAINTIFF'S RESPONSE TO AAA AND RANCIC'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff, NATIONAL CONTINENTAL INSURANCE CO. ("NCIC"), by its attorneys, THE HUNT LAW GROUP, LLC, responds to AAA Freight Inc. ("AAA") and Miljan Rancic's ("Rancic") Memorandum of Law in Support of their Motion for Summary Judgment and states as follows:

**INTRODUCTION**

Despite the majority view as represented by *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997) and *Consumers Cty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002), AAA and Rancic rely on three cases to argue that the FMCSR definition of "employee" is not applicable to the subject policy because the MCS-90 Endorsement ("MCS-90") is merely a surety, which does not modify the policy. Moreover, AAA and Rancic also argue that Vukovic was not an "employee" under Illinois common law and therefore, not subject to the subject policy's employee exclusions. However, these arguments have clearly revealed AAA and Rancic's failure to understand the operation of the Motor Carrier Safety Act ("MCSA") and the Federal Motor Carrier Safety Regulations ("FMCSR") - - as well as the case law interpreting the

said statute and regulations - - with regard to the subject policy and are without merit for the reasons provided below.

## APPLICABLE LAW[1]

Under the authority of the MCSA, 49 U.S.C. § 13906, regulations were promulgated to require that an MCS-90 be attached to any liability policy issued to a certified interstate carrier. *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072, 1074 (9th Cir. 1997) (citing 49 C.F.R. § 387.1). Because MCS-90 is a federally-mandated endorsement whose terms are specified by federal regulation, federal law governs its operation and effect. *Canal Ins.*, 357 Ill. App. 3d at 311. Irrespective of whether an MCS-90 is attached, where a public liability policy is drafted to comply with the federal insurance requirements under the Motor Carrier Safety Act, the definition of "employee" under the FMCSR is applied. *Consumers Cty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 365 (5th Cir. 2002); *see also Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009) (holding that a public-liability policy does not give rise to coverage for a team-driver's injury arising out of an accident that occurred while he was asleep as a passenger); *White v. Excalibur Ins. Co.*, 599 F.2d 50, 53 (5th Cir. 1979) (holding that a team-driver who was resting is nevertheless a statutory employee because "the activities of each of the pair during a single driving stint, including his rest period, are clearly within the course of his employment."). Furthermore, where a policy defines "employee" as "including a 'leased worker,' but does not include a 'temporary worker,'" its definition is not comprehensive and provides no guidance. *Miller v. Northland Ins. Co.*, 2014 WL 1715076, at 4 (Tenn. Ct. App. Apr. 29, 2014).

---

[1] AAA and Rancic have cited host of Illinois cases to argue that Illinois law controls the interpretation of the subject policy in the summary judgment stage. In light of such argument, NCIC argues, under Illinois law, that "when parties file cross-motions for summary judgment, they agree that only a question of law is involved, and invite the court to decide the issue based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Hence, NCIC argues that the parties have acknowledged that only a question of law is involved in the instant case.

30787

Therefore - - consistent with the public policy interest manifested in the MCSA - - the meaning of the term, "employee," is to be interpreted with reference to the Federal Motor Carrier Safety Regulations' definition. *Id.* Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. 49 C.F.R. § 390.5. Such term includes a driver of a commercial motor vehicle (including an *independent contractor* while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. *Id*. (emphasis added).

The MCSA requires motor carriers to procure at least a minimum level of public-liability insurance in order to obtain an operating permit. *Id*. at 365-66, citing 49 U.S.C. § 13906. Although the MCSA places an affirmative insurance obligation on motor carriers, it does not require motor carriers to obtain coverage for "injury to or death of [their] employees while engaged in the course of their employment." *Id*., citing 49 C.F.R. § 387.15. The proof that a motor carrier has met such financial requirement can be shown by attaching the MCS-90. *See* 49 C.F.R. § 387.7(d)(1). However, the MCS-90 is not the only way to prove that the motor carrier has met such requirement. *See* 49 C.F.R. § 387.7(d)(1)-(3). In other words, the existence of the MCS-90 is not a dispositive factor to determine whether the policy was issued and obtained for the purpose of complying with the MCSA and the FMCSR.

Instead, the fact that a public-liability policy was issued to a federal motor carrier indicates that the parties intended the policy to comply with the MCSA and the FMCSR. *See Consumers,* 307 F.3d at 366. In such a case, the policy is to be interpreted in reference to the requirements set forth by the MCSA and the FMCSR. *Id*. Additionally, the Illinois First District Appellate Court has explicitly held that, where the MCS-90 is attached to the policy, the MCSA governs its operation and effect. *Canal Ins. v. A & R Transp. & Warehouse, LLC*, 357 Ill. App. 3d 305, 311

30787

(1st Dist. 2005). Moreover, where a public-liability policy, which is issued to a federal motor carrier, defines "employee" as "including a 'leased worker,' but does not include a 'temporary worker,'" - - which is identical to the definition found in the subject policy - - the policy is to be interpreted with reference to the FMCSR definition because the policy's definition is not comprehensive and provides no guidance. *Miller,* 2014 WL 1715076 at 4. In such cases, the FMCSR definition of "employee," which also includes independent contractors, supplies the definition of "employee" in the policy. *Consumers*, 307 F.3d at 366 (citing 49 C.F.R. § 390.5). Therefore, the FMCSR has eliminated the traditional common law distinction between employees and independent contractors, where a policy is issued to comply with the MCSA and the FMCSR. *Id.* at 365.

Furthermore, the FMCSR definition of "employee" also includes an independent-contractor driver who operates as a team-driver. A team-driver, even the one who is not actively engaged in operating a commercial motor vehicle, is nevertheless a "statutory employee." *See Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009) (holding that a public-liability policy does not give rise to coverage for a team-driver's injury arising out of an accident that occurred while he was asleep as a passenger); *Consumers*, 307 F.3d 362 (holding that a public-liability policy does not give rise to coverage to a team-driver's claim for his injuries that he sustained while he was asleep as a passenger); *White v. Excalibur Ins. Co.*, 599 F.2d 50, 53 (5th Cir. 1979) (holding that a team-driver who was resting is nevertheless a statutory employee because "the activities of each of the pair during a single driving stint, including his rest period, are clearly within the course of his employment."). The foregoing interpretation of the FMCSR definition of "employee," which includes independent contractors and team-drivers, is well

supported by the long-standing case law, as extensively discussed in the NCIC's Memorandum of Law in Support of its Motion for Summary Judgment.

## ARGUMENT

In the instant case, the undisputed facts clearly establish that AAA was operating as a federal motor carrier at the time of the subject occurrence. As such, the subject policy was intended and designed to comply with the MCSA and the FMCSR. Also, an MCS-90 was also attached to the subject policy, which serves as additional proof that the subject policy was intended and designed to comply with the MCSA and the FMCSR. Moreover, the subject policy contained a definition of "employee," which was not comprehensive. Furthermore, both Miljan Rancic and Nikola Vukovic were independent-contractor drivers for AAA, operating as team-drivers at the time of the subject occurrence. Therefore, the evidence is clear that both drivers were "statutory employees" and are subject to pertinent employee exclusions contained in the policy.

**I.     Vukovic was a "statutory employee" at the time of the subject occurrence because he was an independent contractor of AAA**.

AAA and Rancic argue - - under Illinois common law - - that Vukovic was merely a "trainee" and not an "employee." Although AAA and Rancic refer to various cases to assert that Vukovic was not an "employee" under Illinois common law, the evidence is, nevertheless, clear that Vukovic was an independent contractor and therefore, a "statutory employee," subject to the employee exclusions in the subject policy.

AAA and MBDP007 had entered into a lease agreement, by which MBDP007 was to provide drivers to haul products for AAA. (See NCIC's Undisputed Material Facts, par. 23.) Pursuant to the lease agreement, Rancic and Vukovic hauled goods for AAA as independent contractors. (See *id*.) Although Vukovic was being trained by Rancic at the time of the subject occurrence, Vukovic was nevertheless an independent contractor because he operated as a team-

5

driver to Rancic and performed tasks that benefited AAA, including: driving for three hours during the subject round-trip from Illinois to Washington (See *id*., par. 50) and assisting as a "spotter" in Colorado when Rancic was backing up the trailer to the loading dock (See *id*., par. 47). Moreover, Vukovic was compensated for the work he performed for AAA. Specifically, Vukovic was paid $900 by Konstadinovic and $400 to $500 by Rancic, which was to be reimbursed by Konstadinovic. (See *id.*, par. 41, 42.) Also, Vukovic was provided food, cigarettes, and water during the subject trip. (See *id.*, par. 43.) Furthermore, Vukovic was transported to Washington State as a consideration for his services rendered to AAA. Simply put, no matter how AAA and Rancic would like to characterize Vukovic's relationship with AAA, Vukovic was an independent-contractor driver who was compensated for the work he performed for AAA. Therefore, Vukovic was an independent contractor and a "statutory employee" and his injury claim is subject to pertinent employee exclusions in the policy.

## II. **Vukovic was a "statutory employee" because the subject policy was specifically intended and designed to comply with the MCSA and the FMCSR, and the subject policy's definition of "employee" was neither comprehensive nor in conflict with the FMCSR definition of "employee."**

AAA and Rancic ignore the majority view, as represented by *Canal*, *Perry*, and *Consumers*, and rely on the three following cases - - that are either irrelevant to the instant case or represent a minority view - - to argue that the FMCSR definition of "employee" should not apply to the subject policy.

First, AAA and Rancic rely on *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322 (7th Cir. 2010) to assert that the MCS-90 merely creates a suretyship and does not modify the policy to which it is attached. However, AAA and Rancic's reliance on *Munroe* is misplaced because the case is simply irrelevant to the issue of whether an individual is a "statutory employee." Rather, *Munroe* addresses liability exposure to a third-party which the MCSA and the MCS-90

Endorsement in particular are specifically designed to address. In *Munroe*, a third-party motorist was injured in a car accident involving three other tractor-trailers, all of which were insured under the same policy issued to a motor carrier. *Id.* at 323. The injured motorist and his wife brought suit against the motor carrier and the drivers of the tractor-trailers. *Id.* at 324. The plaintiffs entered a settlement agreement in which they agreed to release the motor carrier and the drivers from any individual liability above their policy limit of $1,000,000 in exchange for $903,449.48. *Id.* Thereafter, the insurer brought a declaratory judgment action against the plaintiffs and both parties moved for summary judgment. *Id.* Specifically, the plaintiffs argued that they were entitled to at least $2.25 million because federal law mandated a minimum of $750,000 insurance per vehicle. *Id.* However, the district court granted summary judgment to the insurer and dismissed the plaintiff's argument. The plaintiffs appealed. *Id.*

The Seventh Circuit affirmed the trial court's decision and held that the MCS-90 strictly applies per accident, rather than per-vehicle. Also, the appellate court held that the MCS-90 is not triggered because there was no final judgment in the tort case. *Id.* at 327. Furthermore, as a response to the plaintiffs' contention that the MCS-90 should amend the policy to guarantee at least $750,000 per vehicle, the appellate court opined that the MCS-90 does not modify the policy but "creates a suretyship among the injured public, the insured, and the insurer, under which the insurer agrees to guarantee a minimum payment to *the injured public*." *Id.*

Hence, *Munroe* is simply irrelevant to the instant case because the case is strictly limited to explain how MCS-90 works where the injured plaintiff was a third-party motorist or a member of the public. Also, *Munroe* presents an "unusual set of facts," where multiple tractor-trailers under the same policy were involved in an accident with the plaintiff. *Id.* at 326. Thus, the *Munroe* court was faced with the narrow issue of whether the minimum insurance amount, as mentioned in the

7

30787

MCS-90, is applied per accident or per vehicle. The court's language - - which merely suggests that the MCS-90 does not modify the policy - - is used in the limited context to explain that the minimum insurance amount is not afforded to modify the policy's meaning of "per occurrence," and to explain the suretyship nature of the MCS-90. *Id*. In other words, the *Munroe* court is completely silent as to how the FMCSR definition "employee" is applied to exclude an independent contractor's injury claim from coverage. Therefore, AAA and Rancic's reliance on *Munroe* is misplaced and consequently ignored the long-standing case law established in *Canal*¸ which clearly explained that the FMCSR definition of "employee" informs the interpretation of the MCS-90. *Canal*, 357 Ill. App. 3d at 312.

Second, AAA and Rancic rely on *Spirit Commercial Auto Risk Retention Grp., Inc. v. Kailey*, 2017 WL 2935726 (E.D. Mo. July 10, 2017) to assert - - as in *Munroe* - - that the MCS-90 is a surety, which does not modify the policy. However, AAA and Rancic's reliance on *Spirit* is misplaced because the *Spirit* court errantly based its decision on two cases - - one of which was *Munroe* - - that interpreted the operation of the MCS-90 solely in the context of claims brought by third-party motorists. In *Spirit*, a team-driver who was a passenger in the sleeper berth of a commercial tractor-trailer died in a vehicle collision due to the other driver's negligent operation. *Id*. at 1. The wife of the decedent filed suit against the other driver and the motor carrier. *Id*. The insurer brought a declaratory judgment action against all parties in the underlying case, seeking a declaration that it owed no duty to defend or indemnify the motor carrier in the underlying case. *Id*. Thereafter, the insurer filed a motion for summary judgment arguing, among other things, that there was no coverage afforded under the policy because the decedent was a "statutory employee." *Id*. The United States District Court for the Eastern District of Missouri denied the insurer's motion by noting that the Tenth and Seventh Circuit's opinions - - that held

8

that the MCS-90 endorsement is merely a surety, which does not modify the policy - - were more persuasive than the Fifth Circuit opinion in *Consumers*. *Id*. at 5-6.

However, the *Spirit* court's decision is flawed, in part, because it based its ruling on two cases that were irrelevant to the issue of "statutory employee." The *Spirit* court relied on *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009) - - in addition to *Munroe* - - to assert that the MCS-90 Endorsement is a surety that does not modify the policy to which it is attached. *Id*. at 4 - 5. However, both *Yeates* and *Munroe* were cases that involved an injury claim filed by a third-party motorist. *See Yeates*, 584 F.3d at 871; *Munroe*, 614 F.3d at 323. Thus, both cases are silent as to the issue of "statutory employee" and are limited to the determination of how and when MCS-90 is triggered to afford insurance to a member of the public. Hence, the *Spirit* court failed to discern the important factual distinction between, *Yeates* and *Munroe* on the one hand, and *Consumers*, on the other, and rendered a decision that deviated from the majority view as represented by *Perry* and *Consumers*, and the Illinois law set forth in *Canal*, which is also consistent with the majority view. Therefore, AAA and Rancic's reliance on *Spirit* is misplaced and the case should be given no precedential weight.

Lastly, AAA and Rancic rely on *Glob. Hawk Ins. Co. v. Le*, 225 Cal. App. 4th 593 (1st Dist. 2014)[2] to assert that the FMCSR does not supplant the definition in an insurance policy. *Id*. at 608. However, AAA and Rancic's reliance on *Global Hawk* is misplaced because the case is factually distinguishable from the instant case and its holding represents a minority view on the issue of "statutory employee." In *Global Hawk*, two independent-contract drivers, while driving as a team for the motor carrier, got involved in a single-vehicle accident, injuring the driver who was sleeping in the sleeper berth. *Id*. at 595. The injured driver sued the other driver and the motor

---

[2] AAA and Rancic have stated that *Global Hawk* was a Tenth Circuit case. However, *Global Hawk* is a California First District Appellate case and represents a minority view on the issue of "statutory employee."

9

carrier. *Id*. Soon thereafter, the insurer filed a declaratory judgment complaint against the injured driver and the motor carrier. *Id*. Then, the insurer filed a motion for summary judgment arguing that, pursuant to *Perry*, the FMCSR definition of "employee" excluded the injured driver's claim from coverage. The injured driver responded by arguing that the FMCSR definition of "employee" does not apply because - - unlike in *Perry* - - no MCS-90 was attached to the policy. *Id*. at 599. The trial court held, as in *Perry* and *Consumers*, that because the parties clearly intended to comply with federal regulations, it was reasonable to conclude that the parties intended for the FMCSR definition of "employee" to supply the definition of the term "employee" in the policy." *Id*. Also, the trial court held that although the policy in this case provided a definition of "employee," nothing in that definition was inconsistent with the FMCSR definition. *Id*. Hence, the trial court granted summary judgment in favor of the insurer and the injured driver appealed. *Id*.

The California First District, however, reversed the trial court's ruling by finding that *Perry* and *Consumers* were not applicable to this case. The appellate court opined that *Perry* was inapplicable because, among other things, no MCS-90 endorsement was attached to the policy. *Id*. at 608. The appellate court also noted that the case is distinguishable from *Consumers* because the policy contains a definition of "employee." *Id*.

However, the California First District's rationale to disregard the majority view - - as represented by *Canal*, *Perry*, and *Consumers* - - mirrors AAA and Rancic's failure to understand how a public-liability policy that is issued to a federal motor carrier is to be interpreted in reference to the MCSA and the FMCSR. The Fifth Circuit in *Consumers* has clearly indicated the potential absurdity in declining to apply the FMCSR definition of "employee" to the policy. *See Consumers*, 307 F.3d at 366. Under such premise, a negligent independent-contractor driver would be considered a "statutory employee" only for the purpose of affording coverage for a

*third-party's* injuries. *See Id*. The same driver, however, would not be a "statutory employee" for the purpose of determining whether the employee exclusions preclude coverage for *his* injuries. *See id*. Thus, the Fifth Circuit has held that the term "employee" should not be given a different meaning under an insurance policy depending on the context in which it is used and must interpret the policy's terms in view of the policy as a whole and its overall purpose. *See id*. Moreover, the subject policy's definition of "employee" is neither comprehensive nor in conflict with the FMCSR definition. *See Miller,* 2014 WL 1715076 at 4. Thus, the mere fact that the subject policy contains a definition of "employee" does not by itself affect the applicability of the FMCSR definition. Furthermore, the subject policy contains an MCS-90 endorsement. Hence, under the Illinois law established in *Canal*, the FMCSR definition of "employee" is applied, regardless of the reasoning presented in *Global Hawk*. Therefore, AAA and Rancic's reliance on *Global Hawk* is misplaced. Put simply, the FMCSR definition of "employee" informs the interpretation of the subject policy.

In brief, AAA and Rancic's reliance on the foregoing cases are misplaced because they are either factually distinguishable or irrelevant to the determination of whether Vukovic was a "statutory employee." The majority view, as established in *Perry* and *Consumers*, clearly reflects - - where a public-liability policy is specifically intended and designed to comply with the MCSA and the FMCSR - - the FMCSR definition of "employee" is applied to the policy to deny coverage for a claim brought by a "statutory employee." Therefore, AAA and Rancic's reliance on irrelevant cases to argue that the long-standing case law as established in *Perry* and *Consumers* is meritless.

## CONCLUSION

WHEREFORE, Plaintiff, NATIONAL CONTINENTAL INSURANCE COMPANY, respectfully requests that this Honorable Court deny AAA and Rancic's motion for summary

30787

judgment and enter an order granting summary judgment in favor of NCIC, and for any other such relief that this Honorable Court deems just and appropriate.

                                            Respectfully submitted,

                                            THE HUNT LAW GROUP, LLC

                                            _/s/ Brian J. Hunt_

                                            Brian J. Hunt

Brian J. Hunt (6208397)
Yong S. Lee (6327219)
THE HUNT LAW GROUP, LLC
Attorneys for Plaintiff
10 South LaSalle Street, Suite 1450
Chicago, Illinois 60603
312-384-2300 (phone)
312-443-9391 (fax)
bhunt@hunt-lawgroup.com
ylee@hunt-lawgroup.com