**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL CONTINENTAL INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) ) | 17-cv-2607 |
| v. | ) ) ) | |
| NIKOLA VUKOVIC, AAA FREIGHT INC., AND MILJAN RANCIC, | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff National Continental Insurance Company ("NCIC") brought this declaratory judgment action against Defendants Nikola Vukovic ("Vukovic"), AAA Freight Incorporated ("AAA"), and Miljan Rancic ("Rancic") (collectively, "Defendants"), seeking a determination that NCIC has no duty to defend or indemnify the Defendants in a personal injury lawsuit in the Circuit Court of Cook County styled *Nikola Vukovic v. Miljan Rancic and AAA Freight, Inc., et al.*, Case No. 2016 L 009810 (the "Underlying Lawsuit"). Before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Defendants' motion is granted in part and denied in part. NCIC's motion is denied.

**Background**

The following facts taken from the record are undisputed, except where otherwise noted.

**A.  The Relevant Parties**

NCIC is the insurer for MBDP007 Transportation, Inc. ("MBD Transportation"), a trucking business engaged in the freight transportation industry. Mario Konstadinovic ("Mario")[1] is an independent contractor and owner of MBD Transportation. AAA is a federal motor carrier and trucking company that provides long-haul trucking services. Antonije Kiljevic ("Kiljevic") is the president of AAA. At all relevant times, Rancic worked for MBD Transportation as an independent contractor and provided services to AAA per the Contractor's Lease Agreement (the "Agreement"). Vukovic was a driver and held a temporary commercial driver's license. Vukovic's legal status is one of the main issues in the case.

**B.  The Relationship Between MBD Transportation and AAA**

MBD Transportation entered into the Agreement with AAA, agreeing to provide AAA with certain equipment and qualified drivers for truck-hauling services. In pertinent part, the Agreement stated:

> 1.  The parties intend by this Lease or relationship of [AAA] and [MBD TRANSPORTATION] and not that of employer and employee. Neither the [MBD TRANSPORTATION] nor its agents are to be considered employees of the Lease at any time, for any purpose.

---

[1] The pleadings indicate that multiple attempts to locate and serve Mario were made. However, upon information and belief, Mario appears to no longer be in the country.

2

> 2. [MBD TRANSPORTATION] shall operate equipment covered by the Agreement or furnish sufficient employees to operate said equipment. Any employees furnished by [MBD TRANSPORTATION] shall be his employees, shall be hired, directed, paid, and controlled solely by [MBD TRANSPORTATION]. [MBD TRANSPORTATION] represents that any employees furnished by him are competent, reliable, physically fit and are familiar with State and Federal motor carrier safety rules, laws, and regulations.[2]

The Agreement further explained that "[MBD TRANSPORTATION] was solely responsible for the payment of all wages, payroll taxes, and workman's compensation insurance for the drivers," as well as requiring AAA to "maintain Public Liability Insurance for the leased vehicles."

### C. Allegations Giving Rise to the Current Lawsuit

In August of 2015, AAA and MBD Transportation agreed that MBD Transportation would perform a trip consisting of the following routes: (1) Chicago to Texas; (2) Texas to Colorado; (3) Colorado to Oregon; (4) Oregon to Washington; (5)Washington to Idaho; and (6) Idaho to Indiana (the "Subject Trip"). The Subject Trip was within the purview of the Agreement.

Rancic was hired to be the driver on the Subject Trip with Vukovic scheduled to accompany Rancic as a "trainee and passenger." On August 31, 2015, Rancic was driving in Idaho with Vukovic as his passenger. Vukovic alleges that on this day Rancic negligently lost control of the vehicle, causing it to turn over and fall down a hill. Vukovic suffered a brain injury and required multiple surgeries.

---

[2] The Agreement unambiguously asserts MBD Transportation as the independent contractor and AAA as the Carrier.

On April 5, 2017, Vukovic filed the Underlying lawsuit against Rancic and AAA. In his two-count complaint, Vukovic alleges that he was an "authorized passenger" in the vehicle Rancic operated and had permission from both Rancic and AAA to participate in the Subject Trip. The complaint seeks damages against both Rancic and AAA.

The parties do not dispute that on the Subject Trip, Vukovic served as an independent contractor under the purview of the Agreement. However, the parties offer differing accounts as to Vukovic's role.

The Defendants contend that Vukovic was merely a "trainee" and as such, was not paid by NCIC nor had any expectation of getting paid. Rancic explains that MBD Transportation requested him to drive West because Vukovic had to accomplish something in Washington and that MBD Transportation's president offered a load towards Spokane, Washington, where Vukovic and Rancic coincidentally each maintained residences. According to Rancic, Vukovic was not his "co-driver" and failed to maintain a log book. Rancic testified that he had previously taken this route and did not need Vukovic to complete the Subject Trip. AAA's President, Antonije Ketjevic, testified that AAA did not provide worker's compensation to either Rancic nor Vukovic and that he was unable to terminate either Vukovic or Rancic because each were independent contractors.

NCIC explains that although Rancic was training Vukovic, Vukovic operated as a team-driver to Rancic and performed various tasks that benefited AAA. NCIC alleges

4

that Vukovic drove for three hours on the Subject Trip and assisted Rancic as a "spotter." NCIC also claims that Mario paid Vukovic for his assistance and provided Vukovic with food, cigarettes, and water.

On April 24, 2018, the Defendants filed a summary judgment motion seeking a determination that NCIC has a duty to defend and indemnify the Defendants in the Underlying Lawsuit. NCIC brings this declaratory judgment against the Defendants, seeking a determination that it has no duty to defend or indemnify the Defendants in the Underlying Lawsuit.

**D.     Relationship Between NCIC & AAA as Insurer/Insured**

On April 9, 2015, NCIC issued an insurance policy numbered CIL 000-5276-678-5 (the "Policy") to AAA with effective dates of April 9, 2015 to April 9, 2016.

**I.     The Policy**

The Policy provides the following liability coverage to AAA:

> We will pay sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The Policy contains the following definitions:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
>
> "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
>
> "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to

perform duties related to the conduct of your business. "Leased worker" does not apply to "temporary worker."

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**II.     Exclusion Policies**

The Policy contains two exclusions. First, the "Fellow Employee" exclusion provides, in relevant part, that the Policy excludes from coverage bodily injury to any "fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business."

Second, the "Employee Indemnification and Employer's Liability" exclusion provides that the Policy does not cover bodily injury to an "'employee' of the 'insured' arising out of and in the course of (1) Employment by the 'insured'; or (2) Performing the duties related to the conduct of the 'insured's' business."

The Policy includes a federally mandated endorsement, MCS-90 Endorsement, which states that the "insurance policy to which the endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA)." The MCS-90 Endorsement also explicitly states that "all terms, conditions, and limitations in the policy to which the endorsement

is attached shall remain in full force and effect as binding between the insured and the company."

## LEGAL STANDARD

In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court considers the "record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989).

## DISCUSSION

**A.  Illinois Law Applies**

As an initial matter, there is a choice of law issue to resolve. In diversity cases, federal courts apply federal procedural law and state substantive law. *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Questions of insurance-policy interpretation are substantive." *Natl. Am. Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). Here, the parties agree that Illinois law applies in this case, and there is no reason for the Court to conclude otherwise.

Under Illinois law, if policy provisions "are clear and unambiguous there is no need for construction and the provisions will be applied as written." *Wehrle v. Cin. Ins. Co.*, 719 F.3d 840, 843 (7th Cir. 2013) (quoting *U.S. Fire Ins. Co. v. Schnackenberg*, 429 N.E.2d 1203, 1205 (Ill. 1981)). The provisions in a "clear and unambiguous" policy "must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (quoting *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)).

## I. Allegations of Bodily Injury Under the Policy

The Defendants contend that the Underlying Lawsuit triggered NCIC's duty to defend or indemnify because they alleged "bodily injury" caused by an auto accident. The Defendants argue that although Vukovic was an independent contractor on the Subject Trip, Vukovic was not an "employee" as defined by the subject policy and therefore not subject to the policy's employee exclusions.

NCIC claims it has no duty to defend or indemnify the Underlying Lawsuit and presents two distinct argument as to why Vukovic is an employee under the Subject Policy. First, NCIC contends that Vukovic qualifies as a "statutory employee" as defined by the Federal Motor Carrier Safety Regulations ("FMCSR"). NCIC argues that this broader definition is applicable to the instant cause because the Subject Policy fails to clearly define "employee." Therefore, NCIC argues that the employee exclusions apply because Vukovic qualifies as a "statutory employee."

NCIC next argues that even if the Subject Policy's definition of "employee" controls, the employee exclusions preclude its duty to defend because Vukovic qualifies as a "leased worker" under the Subject Policy.

A.  **The Policy's Definition of "Employee" Controls**

NCIC first argues that the definition of "employee" set forth in the FMCSR applies to the Policy. That definition "includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)." 49 C.F.R. § 390.5 (2018). Therefore, NCIC argues that Vukovic's status as an independent contractor falls with the "employee" definition defined by the FMCSR.

NCIC reasons that, because it issued the Policy to a federal motor carrier to comply with the requirements of the FMCSR, the Policy should incorporate the broader "statutory employee" definition. NCIC also points to the MCS-90 Endorsement as "additional proof" that the parties intended to comply with the FMCSR. We disagree.

The policy is clear and unambiguously defines "employee" to include a "leased worker" but not a "temporary worker." When defining "leased worker" and "temporary worker," the Policy fails to mention or reference a more expansive "statutory employee" definition. The MCS-90 Endorsement also fails to mention or reference the "statutory employee" definition and unambiguously asserts that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force

and effect." Accordingly, because the provisions are clear and unambiguous, we find that the Policy does not incorporate the "statutory employee" definition.

This conclusion accords with the balance of the persuasive authority on this issue, and we agree with the rationale adopted by *National Continental Insurance Company v. Singh*, 2018 WL 3861549, at *1 (N.D. Ill. 2018). In *Singh*, the court evaluated an identical policy and declined to apply the more expansive "statutory employee" language because it was neither contemplated by the Policy nor the MCS-90 Endorsement. *Id.* at *3. When reaching its conclusion, the *Singh* court first evaluated *Gramercy Insurance Company v. Expeditor's Express, Inc.*, 575 F. App'x 607, 608-09 (6th Cir. 2014). In *Gramercy*, the court rejected the expansive "statutory employee" language because the policy supplied a definition for "employee," and neither the policy nor the MCS-90 Endorsement contemplated the "statutory employee" definition. *Gramercy*, 575 F. App'x at 609. The court noted that "the relevant language of the endorsement – 'amend[s the contract] to assure compliance' – does not incorporate the [statutory] definition of employee into the contract … Nothing in the language of the endorsement suggests it operates to amend the more generous coverage in the insurance contract down to the minimum requirements" of the Federal Motor Carrier Act. *Singh*, 2018 WL 3861549, at *3 (citing *Gramercy*, 575 F. App'x at 609).

The *Singh* court next evaluated *Great West Casualty Company v. National Casualty Company*, 53 F. Supp. 3d 1154, 1185-87 (D.N.D. 2014), *aff'd*, 807 F.3d 952 (8th Cir. 2015). Like *Gramercy*, the *Great West* court "found it significant that the

policy already defined 'employee' and made 'no similar attempt' to incorporate the 'statutory employee' definition." *See Singh*, 2018 WL 3861549, at *3 (quoting *Great W. Cas. Co.*, F. Supp. 3d at 1186). The court further noted that adopting the federal "statutory employee" definition would "upset the expectations of the parties" by having the "effect of reducing the scope" of coverage. *Id*. It further noted that the MCS-90 endorsement did not "evince an intent that the federal 'statutory employee' definition be read into the underlying policy,' but rather 'expressly states it does not otherwise modify the underlying policy.'" *Id.*

The *Singh* court also relied on *Northland Insurance Company v. Rhodes*, 2010 WL 5110107 (D. Colo. 2010). The *Rhodes* court declined to adopt the "statutory employee" definition because the policy incorporated a definition of "employee." *Id.* at *7. The court further noted that "the fact that the contract includes such a definition suggests that, regardless of the overarching purpose of the contract, the parties did not specifically intend to incorporate the regulatory definition of 'employee' into the policy." *Id.*

Based on these three cases, the *Singh* court concluded:

> "Thus, the courts in *Gramercy*, *Rhodes*, and *Great West* declined to adopt the broader 'statutory employee' definition into insurance policies where: (1) the policy already defined 'employee;' and (2) neither the policy itself nor the MCS-90 [E]ndorsement referenced incorporation of the statutory definition. *Gramercy* and *Rhodes* additionally recognized that adopting the 'statutory employee' definition would effectively reduce coverage, and upset the expectations of the contracting parties. The circumstances here are the same, and the reason set forth in those cases persuades this Court."

*Singh*, 2018 WL 3861549, at *3.

This Court agrees with the *Singh* court's rationale and declines to apply the "statutory employee" language. Therefore, having determined that the Policy's definition of "employee" governs, we next evaluate whether Vukovic qualifies as a "Leased Worker" under the Policy.

### B. Vukovic And Rancic Are Not "Leased Workers"

NCIC next articulates that Vukovic and Rancic qualify as "leased workers" under the Policy. The Policy defines "leased worker" as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related in the conduct of your business." The Policy requires that a leased worker be someone leased by a "labor leasing firm." Although the Policy and Parties do not define what constitutes a "labor leasing firm" – and this Court is unaware of any Illinois state court ruling interpreting it – the Seventh Circuit in *Telamon Corp. v. Charter Oak Fire Insurance Company* defined "labor leasing firm" as a company "in the business of placing its employees at client companies for varying lengths of time in exchange for a fee." 850 F.3d 866, 870 (7th Cir. 2017) (quoting *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452 (M.D. Fla. 2007); *see also Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 76, 78 (1st Cir. 2009). "In other words, a 'labor leasing firm' is a business concern that sells another person's work for a specified time and for a specified fee."

*Telamon Corp.*, 850 F.3d at 870. Accordingly, this Court applies the definition set forth by the Seventh Circuit.

MBD Transportation, as the moniker implies, is a trucking company; it is not an employment agency or staffing firm. There was no testimony to support NCIC's assertion that MBD Transportation was in the business of leasing employees out to other companies like a labor staffing company does.

The Agreement itself also fails to support NCIC's interpretation of MBD Transportation as a labor leasing firm. The Agreement unambiguously identifies MBD as the "independent contractor," AAA as the "carrier," and expressly states that "[n]either [MBD Transportation] nor its agents are to be considered employees of [AAA] at any time, for any purpose."

The parties also do not dispute that Rancic and Vukovic were independent contractors to MBD Transportation at the time of Vukovic's injuries. NCIC itself repeatedly characterizes them as such, and Keljevic testified that "he cannot fire Rancic (or Vukovic) because they are independent contractors and not employees." Christine Suke, NCIC's corporate attorney, also acknowledged that "it was determined that Vukovic and Rancic were independent contractors." Accordingly, Vukovic and Rancic are not "leased workers" as defined by the Policy.

### C. The Exclusions Do Not Apply As a Matter of Law

As an independent basis to defeat the Underlying Action, NCIC relies on the "Fellow Employee" and "Employee Indemnification and Employer's Liability" policy

exclusions. The "Fellow Employee" exclusion eliminates from coverage bodily injury to any "fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business." The "Employee Indemnification and Employer's Liability" exclusion provides that the Policy does not cover bodily injury to an "'employee' of the 'insured' arising out of and in the course of (1) Employment by the 'insured'; or (2) Performing the duties related to the conduct of the 'insured's' business."

We find that the exclusions do not apply because neither Vukovic nor Rancic fit within the Policy's definition of "employee." Absent incorporation of the "statutory employee" definition, the contract is clear and unambiguous on this point. Applying the Policy as written, and giving the Policy's provisions in their "plain, ordinary, and popular meaning," we find as a matter of law that Rancic and Vukovic are not "leased workers." *See Wehrle*, 719 F.3d at 843. We also find that the Policy did not intend to include independent contractors. Therefore, the exclusions NCIC relies upon do not preclude coverage.

## II. Duty to Indemnify

The Defendants argue that NCIC has a duty to indemnify all allegations brought forth by Vukovic in the Underlying Action. "An insurer's duty to indemnify is narrower than its duty to defend its insured." *Outboard Marine Corp.* v. *Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 127 (1992). "[T]he duty to indemnify is determined once liability has been affixed." *Nat'l Am. Ins. Co.*, 796 F.3d at 724. "[T]he duty to

indemnify arises if the insured's activity and the resulting loss or damage *actually* fall within the…policy's coverage." *Outboard Marine Corp.*, 154 Ill. 2d at 128 (emphasis in original).

A duty to indemnify is not ripe for adjudication "until an insured becomes legally obligated to pay damages in the Underlying Action." *Weber v. St. Paul Fire & Marine Ins. Co.*, 251 Ill. App. 3d 371, 373 (1993). An action "brought to determine the insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe before adjudication in the underlying action." *Id.*

At this juncture, we find this question premature because liability has not yet been decided in *Nikola Vukovic v. Miljan Racic and AAA Freight, Inc., et al.*, Case No. 2016 L 009810, which appears to still be in case management. Accordingly, the Court will not rule on the duty to indemnify at this point.

## **CONCLUSION**

For the aforementioned reasons, the Court grants Defendants' motion in part and denies it in part. NCIC's motion is denied. It is so ordered.

_____
Dated: 3/25/2019                      Charles P. Kocoras
                                             United States District Judge